# EXHIBIT 1

ng # 91869937 E-Filed 06/28/2019 03:40:22 PM

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

HAYDEN & ASSOCIATES, INC. a Florida
corporation,

     **Plaintiff,**

v.                                    CASE NO.:

THE HANOVER INSURANCE COMPANY,
a New Hampshire corporation,

Defendant.

_____/

## COMPLAINT FOR BREACH OF CONTRACT

COMES NOW, the Plaintiff, HAYDEN & ASSOCIATES, INC., by and through the undersigned attorney, and sues the Defendant, THE HANOVER INSURANCE COMPANY, and as grounds therefore states:

1.    This is an action for damages that exceeds the sum of $15,000.00, exclusive of interest, costs and attorney's fees and is otherwise within the jurisdictional limits of this Court.

2.    Plaintiff, HAYDEN & ASSOCIATES, INC. ("HAYDEN"), is a Florida corporation with its principal place of business in Lee County, Florida.

3.    Defendant, THE HANOVER INSURANCE COMPANY ("HANOVER"), is a New Hampshire corporation doing business in Lee County, Florida.

4.    On or about October 12, 2018 a lawsuit was commenced against HAYDEN by ACES OF NAPLES, LLC ("ACES") in the Circuit Court for Collier County, Florida under Clerk's Case No. 17-CA-51 ("Lawsuit").

5.    Initially the only claim brought against HAYDEN in the Lawsuit was for breach of contract, and was based upon allegations that on or about November 16, 2015, HAYDEN, in its capacity as a property manager, had released $93,478.25 in tenant security deposits and advance rent ("Deposits") to the wrong party.

6.    More specifically, it was alleged that a property managed by HAYDEN was sold from one entity to another, and after the sale HAYDEN had mistakenly released the Deposits to the seller, when they had previously been assigned to the buyer, ACES.

7.    The seller refused to return the Deposits to the buyer, and ACES sued HAYDEN for the loss.

8. Subsequently, on February 20, 2019, ACES amended the complaint filed against HAYDEN in the Lawsuit to add an action against HAYDEN for negligence based upon the same operative facts.

9. Defendant, HANOVER, issued a professional liability policy of insurance to HAYDEN, bearing policy number LHW A974690-02 ("Policy"), which was in effect at the time it was alleged that HAYDEN released the Deposits to the wrong party. A true and correct copy of the policy is attached hereto and made a part hereof as Exhibit "A."

10. The Policy issued by HANOVER provides coverage for professional services as follows:

A. Coverage- What this Policy Insures
1. Professional Services Coverages
We will pay on your behalf those sums which you become legally obligated to pay as damages and claim expenses because of any claim made against you arising from a wrongful act in the rendering or failure to render professional services by you.

"Claim expenses" are defined within the Policy as follows:

D. Definitions
Claim expenses means all expenses we incur or authorize in writing for the investigation, adjustment, defense or appeal of a claim. These expenses include fees charged by a lawyer, mediator or arbitrator with our consent for which you are obligated.

11. Plaintiff, HAYDEN has called upon Defendant, HANOVER, to provide its insured, HAYDEN, with coverage and a defense to the Lawsuit.

12. The Defendant, HANOVER, has wrongfully denied HAYDEN coverage, and has refused to provide HAYDEN with a defense to the Lawsuit.

13. Defendant, HANOVER, has materially breached by the terms of the Policy by refusing to provide HAYDEN with a defense against the Lawsuit, and by repudiating coverage for any loss suffered by HAYDEN as a result of the Lawsuit.

14. That as a direct, proximate and natural result of HANOVER'S refusal to provide HAYDEN with coverage or a defense to the claims made against HAYDEN in the Lawsuit, HAYDEN has been required to retain the services of the undersigned attorneys to represent and protect HAYDEN'S interest in the Lawsuit. Plaintiff has become obligated to pay the undersigned attorneys a reasonable fee for services in defending the Lawsuit.

15. That as a direct, proximate and natural result of HANOVER'S refusal to provide HAYDEN with coverage or a defense to the claims made against HAYDEN in the Lawsuit, HAYDEN has been required to retain the services of the undersigned attorneys to bring this action, and HAYDEN has agreed to pay the attorneys a reasonable fee.

16.     That as a direct, proximate and natural result of HANOVER'S refusal to provide HAYDEN with coverage or a defense to the claims made in the Lawsuit, HAYDEN has been deprived of other benefits under the Policy, including but not limited to coverage for sums which HAYDEN may become legally obligated to pay as a consequence of the Lawsuit.

17.     HADYEN is entitled to recover damages from HANOVER for breach of contract.

18.     In the event that HAYDEN prevails in this action, HAYDEN is entitled to an award of attorney's fees and costs pursuant to § 627.428, Fla. Stat., or other Florida Law.

19.     All conditions precedent to the filing of this action have been satisfied, excused or waived.

WHEREFORE, the Plaintiff, HAYDEN, demands judgment against the Defendant, HANOVER, for all damages to which it is legally entitled, including but not limited to an amount equal to any damages awarded against HAYDEN in the Lawsuit, an amount equal to any payments made, or obligated to be made by HAYDEN pursuant to a settlement of the Lawsuit, interest thereon, an award of reasonable attorney's fees and costs incurred by HAYDEN in defense of the Lawsuit, pursuant to § 627.428, Fla. Stat. an award of reasonable attorney's fees and costs incurred by HAYDEN in connection with bringing this action, and for all other relief the Court deems necessary and appropriate.

DEMAND FOR JURY TRIAL: Plaintiff, HAYDEN, demands trial by jury on all issues so triable as a matter of right.

/s/ Jeff Bluestein, Esq.
Jeff Bluestein, Esq.
Anthony M. Lawhon, P.A.
Fla. Bar No.: 965390
Attorneys for Plaintiff
3003 Tamiami Trail N., Ste. 200
Naples, FL 34103
Phone: 239-325-8956
Fax: 239-236-3300
jeffbluestein@lawhonlaw.us
jamiekelenski@lawhonlaw.us

# EXHIBIT "A"



## Property Managers E&O Liability Program

## Evidence of Insurance & Purchasing Group Membership

**PRODUCER:** Babb, Inc. (Fort Myers)
2451 First Street
Fort Myers, FL 33901

| NAMED INSURED: | PROGRAM ADMINISTRATOR: |
|---|---|
| Hayden & Associates, Inc.<br><br>12650 Whitehall Dr.<br>Fort Myers, FL, 33907 | **McGowan Program Administrators**<br>*(A Division of McGowan & Company, Inc.)*<br>Old Forge Centre – 20595 Lorain Road<br>Fairview Park, OH 44126<br>Ph: (440) 333-6300 / F: (440) 333-3214 |

---

**ITEM 1.**     **COVERAGE PERIOD:**    Effective 08/10/2018    To 08/10/2019    At 12:01 A.M. Standard Time
At the Named Insured's Mailing Address Shown Above

         **POLICY NUMBER:**     LHW A974690-02

---

**ITEM 2.**     **INSURER:**        The Hanover Insurance Company

---

**ITEM 3.**     **LIMITS OF LIABILITY AND RETENTIONS:**

| | | | |
|---|---|---|---|
| $ 1,000,000 | For Each Claim | $  10,000 | Deductible |
| $ 1,000,000 | For All Claims in the Aggregate | | |

---

**ITEM 4.**     **FORMS, TERMS & CONDITIONS ATTACHED AT INCEPTION:**
See 910-0912 Item 9.

**ITEM 5.**  **IMPORTANT COVERAGE NOTES & ADDITIONAL TERMS, CONDITIONS & EXCLUSIONS:**

(1)  You Must Notify Us If You Have A Change In Operations Or Exposures Which Increases The Insurance Company's Risk Of Loss.

(2)  This "Evidence Of Insurance & Purchasing Group Membership Agreement" Does Not Convey Or Modify Insurance Coverage. The Policy Is The Controlling Instrument With Regards To The Terms And Conditions Of Insurance Coverage. The Policy Will Also Contain Coverage Enhancement, Coverage Restrictions, And Exclusions. The Application Becomes A Material Part Of The Policy Of Insurance. This "Evidence Of Insurance & Purchasing Group Membership Agreement" Is Intended To Highlight The Pertinent Terms & Conditions Of Coverage, Provide A Detailed Statement Of Charges, And Convey Membership Terms And Conditions.

---

**ITEM 6.**  **SCHEDULE OF CHARGES:**

**Total Premium, Fees, Surcharges & Taxes (If Applicable):  $ 5,188.00**

| | | |
|---|---|---|
| Premium: | $ 4,988.00 | Charged By Insurance Company |
| Purchasing Group Membership Fee: | $ 200.00 | Charged By Purchasing Group |
| Surplus Lines Tax: | $ 0.00 | Charged By State |
| Stamping Fee: | $ 0.00 | Charged By State |
| Other State or Municipal Surcharge: | $ 0.00 | Charged By State or Municipality |
| Loss Control Inspection Fee: | $ 0.00 | Charged By Program Administrator or Inspection Service |

**Purpose & Effect of "Application For Insurance & Purchasing Group Membership."** By Signing An "Application For Insurance & Purchasing Group Membership" (Hereinafter "Application"), Applicant Agreed: (1) To Become A Member Of The Metropolitan Commercial Real Estate Association (Hereinafter "PG"); (2) To Participate In A Program Of Insurance Designed Exclusively For The Members Of PG; (3) To Accept, Abide By, And Be Bound By The "Terms & Conditions Of Insurance" Posted At www.purchasinggroups.com; (4) To Accept, Abide By, And Be Bound By The "Membership Agreement – Terms & Conditions Of Membership" Posted At www.purchasinggroups.com; (5) To Pay All Premiums (Including Audit And Additional Premiums, If Applicable), Fees (Including Broker & Purchasing Group Membership Fees), And State & Federal Taxes & Surcharges (If Applicable) When Due; (6) That Any Additional Material Supplied By Applicant Or Applicant's Insurance Broker To The Managing General Underwriter For A Given Program Of Insurance Becomes A Material Part Of The Application For Insurance; (7) That The Application Which It Signed Was The Basis Of The Contract [Policy &/Or "Evidence Of Insurance & Purchasing Group Membership" (Hereinafter "EOI")], Whether Or Not Said Application Was/Is Attached To The Policy &/Or EOI; (8) That The Application Is A Material Part Of The Policy &/Or EOI, Whether Or Not It Is Attached To The Policy &/Or EOI; And; (9) That The Application Is Considered Attached To The Policy &/Or EOI For Legal Purposes, Whether Or Not It Is Physically Or Electronically Attached To The Policy &/Or EOI.

**Disclosure Pursuant To Federal Law Regarding Purchasing Groups [U.S.C. 15 3901, Et Seq.]** PG Is A "Purchasing Group," As Defined Under Federal Law, Formed To Purchase Liability Insurance On A Group Basis For Its Members To Cover The Similar Or Related Liability Exposure(s) To Which The Members Of PG Are Exposed By Virtue Of Their Related, Similar, Or Common Business Or Service. Members Do Not Share Limits And Each Member Is Provided With Its Own Policy &/Or EOI.

**Disclosure Pursuant To Terrorism Risk Insurance Program Reauthorization Act of 2007 [Et Seq.].** By Signing Below, Applicant Agrees That It Has Read And Understands The Most Recent "Disclosure Pursuant To The Terrorism Risk Insurance Program Reauthorization Act of 2007" Which Appears At www.purchasinggroups.com.

**To Learn More.** Please Visit www.purchasinggroups.com, Which Contains More Information about Your Purchasing Group and Purchasing Groups, In General, As Well As Your Insurance Coverage, Premiums, Fees, Taxes, The MGUs' Income, And Your Insurance Broker's Income.

---

# Customer Notice of Privacy Policy and Producer Compensation Practices Disclosures

## Privacy Policy Disclosure

### Collection of Information

We collect personal information so that we may offer quality products and services. This information may include, but is not limited to, name, address, Social Security number, and consumer reports from consumer reporting agencies in connection with your application for insurance or any renewal of insurance. For example, we may access driving records, insurance scores or health information. Our information sources will differ depending on your state and/or the product or service we are providing to you. This information may be collected directly from you and/or from affiliated companies, non-affiliated third parties, consumer reporting agencies, medical providers and third parties such as the Medical Information Bureau.

We, and the third parties we partner with, may track some of the web pages you visit through cookies, pixel tagging or other technologies. We currently do not process or comply with any web browser's "do not track" signals or similar mechanisms that request us to take steps to disable online tracking. For additional information regarding online privacy, please see our online privacy statement, located at www.hanover.com.

### Disclosure of Information

We may disclose non-public, personal information you provide, as required to conduct our business and as permitted or required by law. We may share information with our insurance company affiliates or with third parties that assist us in processing and servicing your account. We also may share your information with regulatory or law enforcement agencies, reinsurers and others, as permitted or required by law.

Our insurance companies may share information with their affiliates, but will not share information with non-affiliated third parties who would use the information to market products or services to you.

Our standards for disclosure apply to all of our current and former customers.

### Safeguards to Protect Your Personal Information

We recognize the need to prevent unauthorized access to the information we collect, including information held in an electronic format on our computer systems. We maintain physical, electronic and procedural safeguards intended to protect the confidentiality and integrity of all non-public, personal information, including but not limited to social security numbers, driver's license numbers and other personally identifiable information.

### Internal Access to Information

Access to personal, non-public information is limited to those people who need the information to provide our customers with products or services. These people are expected to protect this information from inappropriate access, disclosure and modification.

### Consumer Reports

In some cases, we may obtain a consumer report in connection with an application for insurance. Depending on the type of policy, a consumer report may include information about you or your business, such as:

- character, general reputation, personal characteristics, mode of living;
- credit history, driving record (including records of any operators who will be insured under the policy); and/or
- an appraisal of your dwelling or place of business that may include photos and comments on its general condition.

### Access to Information

Upon written request, we will inform you if we have ordered an investigative consumer report. You have the right to make a written request within a reasonable period for information concerning the nature and scope of the report and to be interviewed as part of its preparation. You may obtain a copy of the report from the reporting agency and, under certain circumstances, you may be entitled to a copy at no cost.

231-0862 12 14

You also may review certain information we have about you or your business in our files. To review information we maintain in our files about you or your business, please write to us, providing your complete name, address and policy number(s), and indicating specifically what you would like to see. If you request actual copies of your file, there may be a nominal charge.

We will tell you to whom we have disclosed the information within the two years prior to your request. If there is not a record indicating that the information was provided to another party, we will tell you to whom such information is normally disclosed.

There is information that we cannot share with you. This may include information collected in order to evaluate a claim under an insurance policy, when the possibility of a lawsuit exists. It may also include medical information that we would have to forward to a licensed medical doctor of your choosing so that it may be properly explained.

### Correction of Information

If after reviewing your file you believe information is incorrect, please write to the consumer reporting agency or to us, whichever is applicable, explaining your position. The information in question will be investigated. If appropriate, corrections will be made to your file and the parties to whom the incorrect information was disclosed, if any, will be notified. However, if the investigation substantiates the information in the file, you will be notified of the reasons why the file will not be changed. If you are not satisfied with the evaluation, you have the right to place a statement in the file explaining why you believe the information is incorrect. We also will send a copy of your statement to the parties, if any, to whom we previously disclosed the information and include it in any future disclosures.

### Our Commitment to Privacy

In the insurance and financial services business, lasting relationships are built upon mutual respect and trust. With that in mind, we will periodically review and revise our privacy policy and procedures to ensure that we remain compliant with all state and federal requirements. If any provision of our privacy policy is found to be non-compliant, then that provision will be modified to reflect the appropriate state or federal requirement. If any modifications are made, all remaining provisions of this privacy policy will remain in effect. For more detailed information about our customer privacy policy (including any applicable state-specific policies) and our online privacy statement, visit our Web site, located at www.hanover.com.

### Further Information

If you have questions about our customer privacy policy (including any applicable state-specific policies) or our online privacy statement, or if you would like to request information we have on file, please write to us at our Privacy Office, N435, The Hanover Insurance Group, Inc., 440 Lincoln Street, Worcester, MA 01653. Please provide your complete name, address and policy number(s). A copy of our Producer Compensation Disclosure is also available upon written request addressed to the attention of the Corporate Secretary, N435, The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

### Producer Compensation Disclosure

Our products are sold through independent agents and brokers, often referred to as "Producers." We may pay Producers a fixed commission for placing and renewing business with our company. We may also pay additional commission and other forms of compensation and incentives to Producers who place and maintain their business with us. Details of our Producer compensation practices may be found at www.hanover.com.

This notice is being provided on behalf of the following Hanover Companies: The Hanover Insurance Group, Inc. - Allmerica Financial Alliance Insurance Company - Allmerica Financial Benefit Insurance Company - Allmerica Plus Insurance Agency, Inc. - Citizens Insurance Company of America - Citizens Insurance Company of Illinois - Citizens Insurance Company of the Midwest - Citizens Insurance Company of Ohio - Citizens Management, Inc. - AIX Ins. Services of California, Inc. - Campania Insurance Agency Co. Inc. - Campmed Casualty & Indemnity Co. Inc. - Chaucer Syndicates Limited - Educators Insurance Agency, Inc. - Hanover Specialty Insurance Brokers, Inc. - The Hanover American Insurance Company - The Hanover Insurance Company - The Hanover New Jersey Insurance Company - The Hanover National Insurance Company - Hanover Lloyd's Insurance Company - Massachusetts Bay Insurance Company - Opus Investment Management, Inc. - Professionals Direct Insurance Services, Inc. - Professional Underwriters Agency, Inc. - Verlan Fire Insurance Company - Nova Casualty Company - AIX Specialty Insurance Company.

231-0862 12 14



*Hanover Professionals*
*Risk Purchasing Group Program*

### FLORIDA DECLARATIONS

*THIS IS A CLAIMS-MADE POLICY. PLEASE READ THE POLICY CAREFULLY.*

## MISCELLANEOUS PROFESSIONAL LIABILITY POLICY

| Policy Number | Coverage is provided by: | Agency | Agency Code |
|---|---|---|---|
| LHW A974690-02 | The Hanover Insurance Company | McGowan & Company, Inc. | 2003984 |

### RISK PURCHASING GROUP NOTICE

**This Miscellaneous Professional Liability Risk Purchasing Group Policy is not protected by an insurance insolvency guaranty fund in this state, and the Risk Purchasing Group may not be subject to all the insurance laws and rules of this state.**

### IMPORTANT NOTICE REGARDING RISK PURCHASING GROUPS

**Disclosure Pursuant to Federal Law Regarding Purchasing Groups [15 U.S.C. SEC. 3901, et seq] the Metropolitan Commercial Real Estate Association ("MCREA") is a "Purchasing Group", as defined under Federal law, formed to purchase liability insurance on a group basis for its Members to cover the similar or related liability exposure(s) to which the Members of the Purchasing Group are exposed by virtue of their related, similar, or common businesses or services. Members do not share limits and each member is provided with its own policy and/or evidence of insurance.**

Issue Date:

**Item 1. Named Insured and Address:**
Hayden & Associates, Inc.

**Item 2. Policy Period:**
Inception Date: 08/10/2018
Expiration Date: 08/10/2019
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

12650 Whitehall Dr.
Fort Myers, FL 33907

**Item 3. LIMIT OF LIABILITY**
Limit of Liability          a. $1,000,000    for each Claim; not to exceed for all Claims in
                            b. $1,000,000    the aggregate

**Item 4. DEDUCTIBLE:**       $ 10,000        Each Claim

**Item 5. RETROACTIVE DATE:**  08/10/2007

**Item 6. PROFESSIONAL SERVICES**   Property Management and Real Estate Agent/Broker and Real Estate Leasir

**Item 7. PREMIUM FOR THE POLICY PERIOD:**
State Surcharge and Tax: $          (if applicable)
Total Premium: $ 4,988.00



**Hanover Professionals**
**Risk Purchasing Group Program**

Item 8. NOTICE OF A CLAIM
Report any claim to the Company as required by Section G. DUTIES IN THE EVENT OF CLAIM(S) OR
POTENTIAL CLAIM(S):

The Hanover Insurance Company
P.O. Box 15145
Worcester, MA 01615

National Claims Telephone Number: 800-628-0250
Facsimile: 800-399-4734
Email: firstreport@hanover.com

Item 9. Forms attached at issue:

| | |
|---|---|
| 231-0862 | Privacy Policy Disclosure |
| 910-0912FL | FL MPL RPG Declarations Page |
| 910-0001FL | FL MPL Policy |
| 401-1268 | OFAC Policyholder Notice |
| 910-0018 | Consent to Settle Amendment Endorsement |
| 910-0081 | Real Estate Agent Specified Services |
| 910-0140 | MPL ERP Notice to Policyholders |
| 910-0198 | Fair Housing Act Coverage |
| 910-0006 | FL Notice |
| 910-0758FL | FL Limited Bodily Injury or Property Damage Carve-Back (Sublimit) |
| 910-0772FL | FL Limited Discrimination Coverage Sublimit |
| 910-0775FL | FL Property Management with Ownership Interest |
| 910-0085 | Additional Insured Endorsement |
| 910-0916 | False Pretenses Exclusion |
| SIG-1100 | Signature Page |

Item 10. Producer Name and Address:

McGowan Program Administrators (A Division of McGowan & Company, Inc.)
20595 Lorain Road, Suite 300
Fairview Park, OH 44126

910-0912FL 01 16                                                    Page 2 of 2

# FLORIDA MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY

## TABLE OF CONTENTS

A. COVERAGE – WHAT THIS POLICY INSURES .................................................................. 2
B. DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY) ......................... 3
C. LIMIT OF LIABILITY AND DEDUCTIBLE ........................................................................... 3
    1. LIMIT OF LIABILITY ................................................................................................... 3
    2. DEDUCTIBLE ............................................................................................................. 3
    3. REIMBURSEMENT .................................................................................................... 3
D. DEFINITIONS ................................................................................................................... 3
E. EXCLUSIONS - WHAT THIS POLICY DOES NOT INSURE ............................................. 6
F. EXTENDED REPORTING PERIOD ................................................................................... 7
G. DUTIES IN THE EVENT OF CLAIM(S) OR POTENTIAL CLAIM(S) .................................. 7
H. CONDITIONS ................................................................................................................... 8
    1. CANCELLATION AND NON RENEWAL ...................................................................... 8
    2. REPRESENTATIONS AND APPLICATION .................................................................. 8
    3. LEGAL ACTION AGAINST US .................................................................................... 9
    4. CHANGE IN OWNERSHIP, CONTROL OR EXPOSURE .............................................. 9
    5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US ......................... 9
    6. ASSIGNMENT ............................................................................................................ 10
    7. SOLE AGENT FOR THE INSURED ............................................................................ 10
    8. COVERAGE TERRITORY AND VALUATION .............................................................. 10
    9. OTHER INSURANCE ................................................................................................. 10
    10. TWO OR MORE POLICIES, COVERAGE PARTS, OR ENDORSEMENTS ISSUED BY US .. 10
    11. ALLOCATION ........................................................................................................... 10
    12. SEPARATION OF INSUREDS .................................................................................... 11
    13. CONFORMANCE TO STATUTE ................................................................................. 11
    14. SECTION TITLES ..................................................................................................... 11
    15. BANKRUPTCY .......................................................................................................... 11
    16. LIBERALIZATION ..................................................................................................... 11

---

**FOR ANY INQUIRIES CALL:**
800-685-5669

# MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY

This is a **CLAIMS-MADE AND REPORTED** policy. Subject to the terms, conditions, exclusions and limitations of this policy, coverage is limited to liability for only those claims that are first made against **you** and reported to **us** in writing after the retroactive date and during the policy period or any optional extended reporting period, if exercised by you.

This is a "defense within limits" policy with claim expenses included within the limit of liability. The limit of liability available to pay damages will be reduced by amounts we pay for claim expenses as defined in the policy. Further note that amounts incurred for claim expenses and damages are subject to the deductible.

Please read this policy carefully.

Throughout this policy, the terms **we**, **us** and **our** refer to the **Company** providing this insurance. The terms **you** and **your** refer to the persons and entities insured under this policy. Other terms in **bold** print have special meaning and are defined in the policy.

## A.  COVERAGE – WHAT THIS POLICY INSURES

1.  **Professional Services Coverage**

    **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering or failure to render **professional services** by **you**.

    The following additional requirements and limitations shall apply to coverage provided under **A.1** above and **A.3.** and **A.4.** below:

    a.  The **wrongful act** must have first occurred on or after the applicable **retroactive date(s)**;

    b.  **You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim**, or any knowledge of the **claim**, prior to the effective date of this policy; and,

    c.  The **claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period**, if applicable, and must arise from any **wrongful act** to which this policy applies.

2.  **Disciplinary Proceedings Coverage**

    **We** will pay on **your** behalf only **defense expenses** incurred in responding to a **disciplinary proceeding** commenced against **you** and reported to **us** in writing during the **policy period**, or which was commenced during the **policy period** and, if exercised, reported to **us** in writing during any optional **extended reporting period**. The maximum amount available for **defense expenses** for a **disciplinary proceeding** is \$25,000 for each **policy period**, regardless of the number of **disciplinary proceedings**. Any payment made hereunder shall not be subject to the deductible and shall not reduce any applicable limit of liability. Inclusive within this coverage, we will pay up to \$250 per day for any salaries and expenses of **your** employees required to attend or participate in any **disciplinary proceeding**. We shall not pay any **damages** incurred as a result of **disciplinary proceedings**.

3.  **Personal Injury Coverage**

    **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** and reported to **us** in writing during the **policy period**, or any **extended reporting period**, if applicable, that arise from **your professional services** and are for:

    a.  **your** defamation, libel, slander, product disparagement, trade libel, infliction of emotional distress or other tort related to disparagement or harm to the reputation or character of any person or entity;

    b.  **your** invasion or interference with the right to privacy or publicity, including but not limited to false light, public disclosure of private facts, intrusion and invasion; or

    c.  **your** causing a third party to be subject to false arrest, detention or imprisonment.

4.  **Technology Professional Coverage**

    **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** arising from **your professional services** and made against any **insured** and reported to **us** in writing during the **policy period**, or any **extended reporting period**, if applicable, that arises from:

a. the inability of an authorized third party to gain access to computer services;

b. unauthorized access to computer services that results in:

1) the destruction, deletion or corruption of electronic data on computer services; or

2) denial of service attacks against computer services or transmission of malicious code to computer services.

## B. DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY)

We have the right to investigate and the exclusive right to defend any claim made under this policy, even if the allegations are groundless, false or fraudulent until there is a final adjudication against you. We are not obligated to defend any criminal investigation, criminal proceeding or prosecution against you. If a claim is not covered under this policy, we will have no duty to defend it.

Payment of claim expenses will reduce the amounts available to pay damages. Our duty to defend any claim or pay any amount as damages or claim expenses will cease when our limit of liability has been exhausted. Upon exhaustion of the limits of liability, we will tender control of the defense to the named insured. The named insured agrees to accept this tender of defense.

We will not settle a claim without the consent of the named insured. If the named insured refuses to consent to a settlement we recommend and which a claimant would accept, then our liability for the claim will not exceed the amount for which we would have been liable for damages if the claim had been settled as recommended by us and acceptable to the claimant, including claim expenses incurred up to the date of the named insured's refusal. After the time of the named insured's refusal, the named insured shall be responsible for all damages in excess of the amount for which the claim could have been settled, and all claims expenses incurred thereafter. For the purpose of this section, settlement includes but is not limited to any resolution of a claim that would have occurred as a result of any court-ordered process which the named insured chose not to accept.

The named insured is responsible for any fees or costs charged by a lawyer defending you or any other defense expenses incurred without our written consent.

## C. LIMIT OF LIABILITY AND DEDUCTIBLE

### 1. LIMIT OF LIABILITY

The limit of liability per claim limit shown on the Declarations page Item 3.a.is the most we will pay for the sum of all damages and claim expenses arising out of a single claim or a series of related claims, regardless of the number of persons or entities insured under this policy, number of claims made or the number of persons or entities making claims during the policy period or during any extended reporting period, if any.

The Aggregate limit shown on the Declarations Item 3.b.is the most we will pay for the sum of all damages and claim expenses for all claims under this policy.

### 2. DEDUCTIBLE

a. You will pay the deductible amount shown in the Declarations. The deductible applies to each claim. We will not be required to make any payment for claim expenses, settlements reached, or judgments rendered in an otherwise covered claim unless and until you have paid the deductible in full. You must pay the deductible (i) immediately when invoiced or, (ii) in the event that offers of judgment or settlement demands are made which you and we agree should be accepted, prior to the expiration of the time period for responding to such offers or demands.

b. All claim expenses will first be subtracted from the limit of liability, with the remainder, if any, being the amount available to pay for damages after you have paid the deductible in paragraph a.

c. If you and we agree to use mediation to resolve any claim brought against you and if the claim is resolved by mediation, your deductible obligation for that claim will be reduced by 50%.

### 3. REIMBURSEMENT

In the event that we voluntarily choose or are compelled by a court of law to make any payment of the deductible and request reimbursement from you, the reimbursement is payable immediately, but no later than thirty (30) days after written demand.

## D. DEFINITIONS

Bodily Injury means physical injury, sickness or disease and, if arising out of the foregoing, mental anguish, emotional distress, mental injury, shock, humiliation or death at any time.

**Claim** means a written demand or **suit you** receive.

**Claim expenses** means all expenses we incur or authorize in writing for the investigation, adjustment, defense or appeal of a claim. These expenses include fees charged by a lawyer, mediator or arbitrator with **our** consent for which **you** are obligated. **Claim expenses** also mean:

1. the premium on appeal, attachment or similar bond; and

2. up to $250 per day per insured for supplemental payment for reasonable expenses incurred for attendance at hearings, trials, or depositions at **our** request or with **our** consent by such **insured**. Such payment shall not exceed $5,000 in the aggregate for all **insureds** in each **claim**.

**Claim expenses** do not include:

1. salaries, wages, fees, overhead or benefit expenses associated with any **insured** except as specified in subparagraph 2. above; or

2. salaries, wages, overhead or benefit associated with **our** employees.

**Company** means the insurance company that issued this policy, as shown on the Declarations page or referred to herein as **we, us, or our**.

**Computer services** means computers and associated input and output devices, data storage devices, networking equipment, backup facilities, and internet sites operated by and either owned by or leased by any third party for whom **you** provide **professional services**.

**Damages** means monetary judgments, awards or settlements unless otherwise excluded. **Damages** includes (i) pre-judgment interest; and (ii) post judgment interest that accrues after entry of judgment and before **we** have paid, offered to pay or deposited in court that part of judgment within the applicable limit of liability.

**Damages** does not mean punitive or exemplary **damages** or the multiple portion thereof.

**Damages** do not include any costs or expenses in complying with any demand for or award of **equitable relief**, even if such compliance is compelled as a result of a judgment, award or settlement.

**Defense expenses** means all expenses **you** incur in investigation, defense or appeal of any **disciplinary proceeding**.

**Disciplinary proceeding** means any proceeding by a disciplinary official or agency to investigate or prosecute charges alleging professional misconduct in the performance of **your professional services**.

**Employment practices** means any actual or alleged:

1. wrongful termination of the employment of, or demotion of, or failure or refusal to hire or promote any person in violation of law or in breach of any agreement to commence or continue employment;

2. unlawful employment discrimination;

3. sexual harassment of an employee or applicant for employment; or

4. retaliatory treatment against an employee on account of that employee's exercise or attempted exercise of his or her rights under law.

**Equitable relief** means a remedy not involving the payment of monetary **damages**.

**Extended reporting period** means an additional period of time for reporting **claim(s)**. The **extended reporting period** starts on the **policy termination date** and ends at the **extended reporting period expiration date**.

**First inception date** means the inception date of the first Miscellaneous Professional Liability **policy** issued by **us** to the **named insured** and continually renewed by **us** until the inception date of this current **policy**.

**Insured** means:

1. the **named insured**; and

2. if **you** are a sole proprietorship, any past or present employee of **yours**, but only while acting on **your** behalf in their capacity as an employee;

3. if **you** are a partnership, any past or present general or managing partner, principal or employee of **yours**, but only while acting on **your** behalf in such capacity;

4. if **you** are a limited liability company, any past or present managing member, principal or employee of **yours**, but only while acting on **your** behalf in such capacity;

5.   if **you** are a corporation, any past or present officer, director, trustee, or employee of **yours,** but only while acting on **your** behalf in such capacity;

6.   **your** temporary or leased employees, but only while acting on **your** behalf as an employee;

7.   if **you** are a **subsidiary** of the named **insured, you** are only covered while acting on behalf of the named **insured;**

8.   **your** lawful spouse solely for liability arising from any **wrongful act** of an **insured** committed without the participation of such spouse;

9.   **your** heirs, assigns and legal representatives in the event of **your** death, incapacity or bankruptcy to the extent that **you** would have been covered; or,

10.  an independent contractor for **claims** and damages under Section A.1, 3, or 4, but only while acting on **your** behalf  and only if there is a signed agreement executed by the named **insured** and the independent contractor which:

   a)   specifies the services to be performed by the independent contractor on the named **insured's** behalf;

   b)   provides that the services performed by the independent contractor will be under the named **insured's** supervision;

   c)   states that the independent contractor will be indemnified by the named **insured** for the services performed on the named **insured's** behalf; and,

   d)   is entered into before the **wrongful act** which leads to a **claim** or **potential claim.**

**Loss** means **claim expenses, damages** and defense **expenses** and does not include **equitable relief.**

**Malicious code** means any virus, trojan horse, worm or similar software program, code or script intentionally designed to insert itself into computer memory.

**Mediation** means the non-binding intervention of a qualified neutral third party chosen by **you** and the other party to a **claim** with agreement by **us.**

**Named insured** means the individual, entity, partnership, or corporation designated as such in the Declarations page.

**Policy** means this **policy** form, the Declarations, and any endorsement to the **policy** issued by **us,** and **your** application, including all supplements.

**Policy period** means the period from the effective date of the **policy** to the expiration date or earlier termination date of the **policy.**

**Policy termination date** means the expiration date of the **policy** as shown on the Declarations page or the cancellation date of the **policy,** whichever is earlier.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

**Potential claim** means any **wrongful act** or any facts or other circumstances which may subsequently give rise to a **claim.**

**Professional services** means those services described in Item 6. of the Declarations which **you** perform for others for a fee.

**Property damage** means (1) physical injury to, loss or destruction of, tangible property including the resulting loss of use thereof; or (2) loss of use of tangible property which has not been physically injured or destroyed.

**Retroactive date(s)** refer to the dates shown in Item 5. of the Declarations.  If no date is shown on the Declarations page the retroactive date will be inception date of the policy.

**Subsidiary** means

1.   any corporation, identified by **you** in the application for this **policy,** of which the named **insured** owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly on the inception date of the **policy period;** or

2.   any corporation which becomes a **subsidiary** during the **policy period** provided that such corporation does not represent more than a ten percent (10%) increase in the total assets or gross revenue of the named **insured** as of the date of the acquisition.  Where such corporation represents an increase in the total assets or gross revenue of the named **insured** of more than ten percent (10%), such corporation shall be deemed a

subsidiary under the policy, but only upon the condition that within ninety (90) days of its becoming a **subsidiary, you** shall have provided us with full particulars of the new **subsidiary** and agree to any additional premium and/or amendment of the provisions of this policy required by us relating to such new **subsidiary,** subject to the review and acceptance by us of full and complete underwriting information. Further, coverage as shall be afforded to the new **subsidiary** is conditioned upon the **named insured** paying when due any additional premium required by us relating to such new **subsidiary.** A corporation becomes a **subsidiary** when the **named insured** owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly, and ceases to be a **subsidiary** at such time when the **named insured** ceases to own more than fifty percent (50%) of the issued and outstanding voting stock.

**Suit** means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading. **Suit** includes a binding arbitration proceeding in which **damages** are alleged and to which you must submit or do submit with our consent.

**Unauthorized access** means the use of or access to **computer systems** by a person not authorized to do so by the Named Insured, or the use or access to **computer systems** in a manner not authorized by the named insured.

**Wrongful act** and **wrongful acts** means any actual or alleged negligent act, error, omission, or misstatement committed in **your professional services.**

E. **EXCLUSIONS - WHAT THIS POLICY DOES NOT INSURE**

This policy does not apply to claim(s)

1. based upon, arising out of, or in any way relating directly or indirectly to any **insured:**

   a) committing any intentional, dishonest or fraudulent act or omission; or

   b) gaining any profit, remuneration or advantage to which such **insured** was not legally entitled; provided that this exclusion will not apply until a final adjudication establishes a) or b) above.

2. for any willful or criminal violation of any statute, rule or law.

3. for the return, restitution or reduction of professional fees or arising from any demand for **equitable relief.**

4. arising out of **bodily injury** or **property damage;**

5. arising out of:

   a) any purchase, sale, or offer or solicitation of an offer to purchase or sell securities;

   b) any violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; or

   c) any violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act, or "RICO"), as amended, or any regulation promulgated thereunder or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law;

6. arising out of any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein;

7. arising out of any **employment practices** liability or any discrimination on any basis, including, but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

8. arising out of any misappropriation or misuse of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right;

9. arising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws;

10. against you that are brought by or on behalf of any federal, state or local government agency or professional or trade licensing organizations; however, this exclusion shall not apply where the **claim** is alleging a **wrongful act** in **your** rendering **professional services** to such entity or for a **disciplinary proceeding;**

11. arising out of liability you assume under any contract or agreement; however, this exclusion does not apply to liability you would have in the absence of such contract or agreement;

12. against you that are brought by or on behalf of:

   a) any business entity that is owned, managed or operated, directly or indirectly, in whole or in part, by you;

   b) any parent company, subsidiary, successor or assignee of yours, or anyone affiliated with you or such business entity through common majority ownership or control; or

   c) any independent contractor supplying material or services to you;

13. arising out of disputes involving:

   a) your fees or charges, including over-charges, or cost over-runs;

   b) collecting your fees from third parties;

   c) the return of fees or other compensation paid to you; or

   d) your cost of correcting or re-performing or completing any **professional services**;

14. arising out of **your** advising, requiring, obtaining or failing to advise, require or obtain any bond, suretyship or other form of insurance;

15. arising out of or resulting, directly or indirectly, from any actual or alleged commingling, misappropriation or improper use of funds or monies

16. arising out of a **claim** by any **insured** under this policy against any other **insured** under this policy.

17. arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

## F. EXTENDED REPORTING PERIOD

1. **You** will be entitled to an automatic **extended reporting period** for no additional premium. This extension is applicable to any **claim** made against **you** during the **policy period** and reported to **us** in writing, during the sixty (60) days immediately following the **policy termination date**.

2. **We** will provide an optional **extended reporting period** as described below:

   a) If this **policy** is canceled, terminated or non-renewed, **you** shall have the right, upon payment of an additional premium, to an extension of the reporting period for any **claim** against **you** first made and reported after the date upon which the **policy period** ends, but only with respect to **wrongful acts** committed prior to the end of the **policy period** and otherwise covered by this **policy**. Such period shall be referred to as the optional **extended reporting period**.

      1) The available optional **extended reporting periods** and additional premium are determined in accordance with the rules, rates and rating plans **we** then have in effect in **your** state.

      2) **You** must request the optional **extended reporting period** in writing and must pay **us** the additional premium within 30 days following the date of such cancellation, termination or nonrenewal. If **we** do not receive **your** request and premium payment within 30 days following the date of such cancellation, termination or non-renewal, **your** right to purchase the optional **extended reporting period** shall cease.

      3) If **we** cancel for non-payment of premium, **you** may purchase the optional **extended reporting period** only after any earned premium due **us** is paid within 10 days after the date of cancellation or **policy** expiration, whichever comes first.

   b) All premiums paid for an optional **extended reporting period** shall be deemed fully earned as of the first day of the optional **extended reporting period**. The optional **extended reporting period** may not be canceled.

   c) The optional **extended reporting period** shall not increase any limits of liability stated in Item 3. of the Declarations page. For the purpose of **policy** limits, the reporting periods are part of, not in addition to, the **policy period**.

## G. DUTIES IN THE EVENT OF CLAIM(S) OR POTENTIAL CLAIM(S)

1. If **you** receive a **claim**, **you** and any other involved **insured(s)** must see to it that **we** receive written notice of the **claim**, with full details including the date received, as soon as practicable, but in no event later than 90 days after such **claim** is first made.

2. You and any other involved **insured** must:

   a) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim;

   b) Authorize **us** to obtain records and other information;

   c) Cooperate with **us** in the investigation, defense or settlement of the **claim**; and

   d) Assist **us**, upon our request, in the enforcement of any right against any person or entity which may be liable to **you** because of damages to which this insurance may apply.

3. No **insured** will, except at that **insured's** own cost, voluntarily make a payment, assume any obligation, agree to a settlement or incur any expense related to a **claim** without our consent.

4. If during the **policy period**, **you** become aware of a **wrongful act** or any facts or other circumstance that occurred on or after the retroactive date but prior to the end of the **policy period**, which may reasonably be expected to subsequently give rise to a **claim** against **you**, **you** must give **us** written notice as soon as practicable, but in any event not later than the end of the **policy period** or any **extended reporting period**, if applicable. To the extent possible notice should include:

   a) Where the **wrongful act** took place and any facts or circumstance concerning the **wrongful act**; and

   b) The names and addresses of any persons and entities involved.

5. Any **claim** arising out of the **wrongful act**, facts or circumstance which is subsequently made against **you** shall be deemed to have been first made at the time **we** received such written notice from **you**, if **we** receive proper notice of the **potential claim** according to paragraph **4.** above.

The date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

## H. CONDITIONS

1. **CANCELLATION AND NON RENEWAL**

   a) **We** may not cancel this **policy** except for failure to pay premium when due, in which case **we** will give 10 days written notice to the **named insured** before such cancellation is effective.

   b) The **named insured** may cancel this **policy** for itself and all other **insureds** by written notice to **us** stating when thereafter the cancellation shall be effective. If the **named insured** cancels, **we** will return 90% of the pro rata unearned premium, rounded to the next higher whole dollar within 15 days of the effective date of cancellation.

   c) **We** are not required to renew this **policy**. However, written notice of **our** intent to non-renew this **policy** shall be sent to the **named insured** at least 60 days prior to expiration of the **policy period**.

   d) Notices of cancellation or nonrenewal shall be sent by first class mail to the last address known to **us** with a statement of the specific reasons for cancellation or nonrenewal.

   e) If **we** decide to offer renewal terms, notice will be mailed by first class mail, at least 45 days prior to the expiration of the **policy** to the **named insured**. Failure to make the required premium payment by the renewal date will result in termination of the **policy** for nonpayment of premium.

   f) If **we** fail to provide at least 45 days notice of nonrenewal or changes in the terms and conditions of this **policy**, coverage will remain in effect until 45 days after notice is given or until the effective date of replacement coverage you obtain, whichever occurs first. Any earned premium for the extension of the terminated **policy** will be calculated pro rata based on the expiring premium or the rate filing then in effect, whichever is lower.

2. **REPRESENTATIONS AND APPLICATION**

By accepting this **policy you** agree that:

   a) The statements in the Declarations are accurate and complete;

   b) Those statements are based on representations **you** made in **your** application for this insurance **policy**;

   c) The representations made in **your** application are the basis of this **policy** and are to be considered as incorporated into and constituting a part of this **policy**;

   d) Those representations are material to the acceptance of the risk **we** assumed under this **policy**;

e) We have issued this **policy** in reliance upon the truth, accuracy and completeness of such representations;

f) The application shall be interpreted as a separate application for coverage by each **insured**. No statement in the application, fact pertaining to or knowledge possessed by any **insured** shall be imputed to any other **insured** for the purpose of determining if coverage is available; and

g) Statements in the application, facts pertaining to or knowledge possessed by the individual signing the application shall be imputed to the **named insured**.

3. **LEGAL ACTION AGAINST US**

No person or entity has a right under this **policy**:

a) To join **us** as a party or otherwise bring **us** into a suit asking for **damages** from an **insured**; or

b) To sue **us** on this **policy** unless all of its terms have been fully complied with.

A person or entity may sue **us** to recover on an agreed settlement or on a final judgment against an **insured**; but we will not be liable for **damages** that are not payable under the terms of this **policy** or that are in excess of the applicable limit of liability. An agreed settlement means a settlement and release of liability signed by **us**, the **insured** and the claimant or the claimant's legal representative.

4. **CHANGE IN OWNERSHIP, CONTROL OR EXPOSURE**

a) If during the **policy period**:

1) Another person or entity or group of persons or entities acquires more than 50 percent of the assets of the **named insured**; or

2) Another person or entity, or group of persons or entities, acquires an amount of the outstanding securities representing more than 50 percent of the voting power for the election of the **named insured's** directors or trustees; or

3) The **named insured** consolidates with or merges with another entity; **you** shall notify **us** of the change described in 1., 2., or 3. above, herein referred to as **transaction**, as soon as practicable, but not later than 30 days after the effective date of the **transaction** and provide such additional information as we require.

b) If a **transaction** occurs, coverage under this **policy** shall continue until termination of the **policy period** but only with respect to **claims** and **potential claims** made for **wrongful acts** which took place prior to the **transaction**.

c) If **you** fail to provide notice as described in 4.a. above, coverage provided to **you** under this **policy** shall terminate. We will send written notice 45 days in advance of the termination date.

d) In the event of a **transaction**, the **named insured** will have the right to an extension of coverage under the **policy** for a **claim** first made and reported during the 12 months after the **transaction** but, only with respect to any **wrongful act** occurring prior to the **transaction** and otherwise covered by this **policy**. The 12 month period shall be referred to as the run-off period:

1) The premium means the premium in effect immediately prior to the **transaction**.

2) The rights contained in paragraph 4. shall terminate unless written notice of the election and the additional premium due is received by **us** within 60 days of the **transaction**.

e) In the event of a **transaction**, the **named insured** has the right to purchase the run-off period but, has no right to purchase the optional **extended reporting period** described in section F. of the **policy**.

f) The additional premium for the run-off period shall be fully earned at the inception of the run-off period. The run-off period is not cancelable.

g) The limit of liability for the run-off period is part of and not in addition to the limit of liability in Item **3.** of the Declarations page.

5. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If **you** have rights to recover all or part of any payment we have made under this **policy**, these rights are transferred to **us**. **You** must do nothing after a loss to impair our rights to seek or obtain recovery from others. At our request, **you** will sue those responsible or transfer those rights to **us** and help **us** enforce them. In the event of any payment under this **policy**, we shall be subrogated to the extent of such payment to all of **your** rights of recovery. **You** shall execute and deliver such instruments and papers and

FL-910-0001 12 09

do whatever else is necessary to secure such rights and shall do nothing to prejudice or compromise such rights without our express written consent.

6.  ASSIGNMENT

No change in, modification of or assignment of interest in this policy shall be effective except when made by a written endorsement to the policy.

7.  SOLE AGENT FOR THE INSURED

By accepting this policy, you agree that only the named insured is authorized to act on behalf of all insureds with respect to the following: consenting to settlement or releasing rights under this policy; payment for premiums and deductibles, receiving return premiums, giving or receiving notice of cancellation or nonrenewal, requesting any optional extended reporting period or run-off period and agreeing to any changes in this insurance policy. Each insured agrees that the named insured shall act on its or their behalf with respect to such matters.

8.  COVERAGE TERRITORY AND VALUATION

a)  This policy applies to a wrongful act committed anywhere in the world provided that the claim is made and suit is brought against the insured within the United States, its territories or possessions or Canada.

b)  All premiums, limits, deductibles, loss and other amounts are expressed and payable in the currency of the United States of America. If a judgment is rendered, a settlement is denominated or another element of loss under this policy is stated in a currency other than the United States of America dollars, payment under this policy shall be made in United States of America dollar equivalent determined by the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of loss is due, respectively.

9.  OTHER INSURANCE

a)  If other valid and collectible insurance is available to you for loss covered under this policy, the insurance provided by this policy shall be excess over such other insurance, regardless of whether or not such insurance is primary, contributory, excess, contingent or otherwise.

b)  When this insurance is excess we have no duty to defend you against any claim if any other insurer has a duty to defend you against the claim. If no other insurer defends we will undertake to do so but we will be entitled to your rights against those other insurers.

c)  When this insurance is excess over other insurance we will pay only our share of the amount of loss, if any, that exceeds the sum of:

1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance;

2)  The total of all deductibles, self-insurance and retentions under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the limit of liability shown in the Declarations page of this policy.

10. TWO OR MORE POLICIES, COVERAGE PARTS, OR ENDORSEMENTS ISSUED BY US

It is our stated intention that this policy and any other policy, coverage part or endorsement issued by us, or by another member of the company, shall not provide duplication or overlap of coverage for the same claim. If this policy and any other policy issued by us, or by another member of the company, to you, apply to the same claim then, Condition 9. Other Insurance notwithstanding:

a)  We shall not be liable under this policy for a greater proportion of the loss than the applicable limit of liability of this policy bears to the sum of the total limits of liability of all such policies; and

b)  The maximum amount payable under all such policies combined shall not exceed the highest applicable limit of liability under any one policy.

11. ALLOCATION

If you incur both loss covered by this policy and loss not covered by this policy on account of any claim because such claim includes both covered and non-covered matters, coverage with respect to such claim shall apply as follows:

a)  100 percent of defense expenses on account of the claim will be considered covered loss; and

**b)** We shall fairly allocate all remaining loss that you incurred on account of such **claim** between covered **loss** and non-covered **loss**.

**12. SEPARATION OF INSUREDS**

Except with respect to the limits of liability, deductible and any rights or obligations assigned to the first **named insured**, this insurance applies:

**a)** As if each **insured** were the only **insured**; and

**b)** Separately to each **insured** against whom a **claim** is made.

**13. CONFORMANCE TO STATUTE**

The terms of this **policy** which are in conflict with the statutes of the state in which this **policy** is issued are amended to conform to those statutes.

**14. SECTION TITLES**

The titling of sections and paragraphs within this **policy** is for convenience only and shall not be interpreted as a term or condition of this **policy**.

**15. BANKRUPTCY**

**You** or **your** estate's bankruptcy or insolvency does not relieve **us** of **our** obligations under this **policy**.

**16. LIBERALIZATION**

If **we** adopt any revisions to the terms and conditions of this **policy** form to provide more coverage without an additional premium charge during the **policy** term, the broadened coverage will immediately apply. However, the broadened terms and conditions will not apply to any **claims** that were first made against **you** prior to the effective date of the revision.



<u>U.S. TREASURY DEPARTMENT'S</u>
<u>OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")</u>

<u>ADVISORY NOTICE TO POLICYHOLDERS</u>

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this notice carefully.**

The Office of Foreign Assets Control ("OFAC") administers and enforces sanctions policy, based on Presidential Declarations of National Emergency.

OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site:  http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated United States sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

Other limitations on the premiums and payments also apply.

401-1268 08 12

**Page 1 of 1**

# CONSENT TO SETTLE AMENDMENT
# ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Named Insured: Hayden & Associates, Inc. □ DBA Hayden Real Estate, LL(          Policy Number: LHW A974690-02

Issued by The Hanover Insurance Company:

This endorsement, Effective 12:01 A.M. 08/10/2018   modifies the following:

**SECTION B. -- DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT)**, third Paragraph, is replaced with the following:

We will not settle a **claim** without the consent of the **named insured**. If the **named insured** refuses to consent to a settlement of any **claim** we recommend and which a claimant would accept, subject to the applicable limit of liability and deductible then **our** liability for the **claim** is limited to:

1. What we would have contributed to the settlement if **you** had consented to the settlement, including **claim expenses** incurred up to the date of such refusal; and

2. Seventy (70%)          percent of such **damages** in excess of the amount for which the **claim** could have been settled.

After the time of the **named insured's** refusal, the **named insured** shall be responsible for all **loss** in excess of the amount for which the **claim** could have been settled, the percentage of **damages** noted above in 2., and all **claims expenses**, incurred thereafter. For the purpose of this section, settlement includes but is not limited to any resolution of a **claim** that would have occurred as a result of any court-ordered process which the **named insured** chose not to accept.

All other terms and conditions remain unchanged.

910-0018 03 10                                                              Page 1 of 1

# EXCLUSION - REAL ESTATE AGENT SPECIFIED SERVICES

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Named Insured: Hayden & Associates, Inc. □ DBA Hayden Real I        Policy Number:  LHW A974690-02

Issued by The Hanover Insurance Company:

This endorsement, Effective 12:01 A.M. 08/10/2018    modifies the following:

**A.** The following is added to Item 6. of the Declarations:

Advice given, or services performed by an **insured** for others as a **real estate agent**, but solely when such services are performed on behalf of an **insured** as a **real estate agency**; and provided that the **insured** is appropriately licensed by the state in which the **insured** is doing business.

**B.** The following is added to SECTION D – DEFINITIONS:

**Real estate agency** means an entity doing business for compensation in the selling, leasing or marketing of commercial or residential real estate.

**Real estate agent** means an **insured** doing business as either an agent or broker in the sale or leasing of commercial or residential real estate.

**Real estate agent** shall also mean real estate referral agent, real estate personal assistant, a notary public, or a member of a formal real estate accreditation, standards review or other similar real estate board or committee.

**C.** The following is added to SECTION E – EXCLUSIONS – WHAT THIS POLICY DOES NOT INSURE:

This policy does not apply to claim(s):

Based upon or arising out of:

a) Any conversion or improper use of property;

b) The **insured's** inability or refusal to pay or collect premium, or tax monies;

c) Any promises, warranties, representations, or guarantees made by the **insured** as to the current or future value of any property;

d) Any promises, warranties, representations, or guarantees as the suitability of the property for a specific use;

e) The formation, syndication, operations or administration of any property syndication, or real estate investment trust to any other form of corporation, general or limited partnership or joint venture formed for the purpose of investing in, selling or maintaining real property including those syndications, trusts, corporations, partnerships or joint ventures in which the **insured** has, had or intended to have a participating interest directly or indirectly in the profits or losses thereof; or

f) The purchase of property by, or the sale of property developed, constructed or owned by:

   1) An **insured** at the time of the **wrongful act** giving rise to such **claims**;

   2) Any entity in which the **insured** had, at the time of the **wrongful act** giving rise to the **claim**, a financial interest or a contemplated financial interest;

   3) Any entity which had, at the time of the **wrongful act** giving rise to the **claim**, a financial interest in the **named insured**; or

   4) Any entity which, at the time of the **wrongful act** giving rise to the **claim**, was under the same financial control as the **named insured**; or

g) Asbestos or lead, whether or not the asbestos or lead was at any time: airborne as a fiber, particle or dust; contained in or formed a part of a product, structure, or other real or personal property; carried on clothing; ingested or inhaled or transmitted in any fashion; or found in any form whatsoever;

All other terms and conditions remain unchanged.

910-0081 02 12        Page 1 of 1



**NOTICE TO POLICYHOLDERS:**
**MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE**

<u>**INFORMATION REGARDING EXTENDED**</u>
<u>**REPORTING PERIOD ENDORSEMENT**</u>
<u>**("ERP COVERAGE")**</u>

The enclosed policy provides coverage for claims reported during the policy period. Subject to the policy's terms and conditions, you may purchase an Extended Reporting Period Endorsement, also known as "ERP coverage", that will extend the time for reporting claims arising out of professional services rendered while the policy was still in effect, although the policy may have been cancelled, nonrenewed, or terminated.  Please refer to Section F. of your policy for the terms and conditions for eligibility, purchasing or obtaining an Extended Reporting Period endorsement. *There is a limited time for requesting such an endorsement.*

The premium charged for the endorsement is expressed as a percentage of your policy's annual premium.

| Length of "ERP Coverage" Offered | "ERP Coverage" Premium |
|---|---|
| 12 months | 100 % of expiring annual premium |
| 24 months | 150 % of expiring annual premium |
| 36 months | 200 % of expiring annual premium |

*Extended Reporting Period Endorsements may be subject to state regulatory requirements.*

Please contact your agent or customer service representative for pricing specific to your situation and location.

910-0140 10 11                                                                                          Page 1 of 1

# FAIR HOUSING ACT COVERAGE

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Named Insured:  Hayden & Associates, Inc. ☐ DBA Hayden Real Estate, L  Policy Number: LHW A974690-02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M. 08/10/2018   modifies the following:

A.  The following is added to SECTION A – COVERAGE – WHAT THIS POLICY INSURES:

Fair Housing Act Coverage

We will pay on **your** behalf **damages** and **claim expenses** because of any **claim** arising out of **your professionals services** and made against **you** for violations of the Fair Housing Act of 1968, 42 USCS § 3601, et seq. (as amended) ("Fair Housing Act") and reported to **us** in writing during the **policy period**, or any **extended reporting period**, if applicable.

**Our** aggregate Limit of Liability for **damages** and **claim expenses** for all Fair Housing Act violation **claims** covered under this endorsement, during the **policy period**, is $250,000 which amount will be included within, and not in addition to, the aggregate Limit of Liability set forth in Item 3.b. of the Declarations.

B.  The following is added to SECTION E – EXCLUSIONS:

This **policy** does not apply to **claim(s)** for any fines, penalties, sanctions or taxes;

All other terms and conditions remain unchanged.

910-0198 01 15

## NOTICE TO FLORIDA INSUREDS

### Miscellaneous Professional Liability Insurance
### Claims – Made Notice

This policy is a CLAIMS-MADE AND REPORTED policy. Subject to the terms, conditions, exclusions and limitations of this policy, coverage is limited to liability for only those claims that are first made against you and reported to us in writing after the retroactive date and during the policy period or any optional extended reporting period, if exercised by you.

Unless otherwise endorsed, this is a "defense within limits" policy with claim expenses included within the Limit of Liability. The Limit of Liability available to pay damages will be reduced by amounts we pay for claim expenses as defined in the policy. Further note that amounts incurred for claim expenses and damages are subject to the deductible. Please read this policy carefully.

# LIMITED BODILY INJURY OR PROPERTY DAMAGE CARVE-BACK (SUBLIMIT) - FLORIDA

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Named Insured: Hayden & Associates, Inc. D DBA Hayden Real I          Policy Number: LHW A974690-02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M. 08/10/2018   modifies the following:

**SECTION E – EXCLUSIONS**, Paragraph 4. is replaced by the following:

4.  Arising out of **bodily injury** or **property damage**; however, this exclusion does not apply to any **claim** arising out of a **wrongful act** committed by an **insured** in the rendering of **professional services**.

Notwithstanding anything to the contrary in the **policy**, including any endorsements thereto:

**Our** aggregate Limit of Liability for **damages** and **claims expenses** arising out of all **bodily injury** or **property damage claims** covered under this endorsement is $ 1,000,000    (or the applicable aggregate Limit of Liability, set forth in Item **3.b.** of the Declarations, whichever is less), which amount will be included within, and not in addition to, the aggregate Limit of Liability set forth in **Item 3.b.** of the Declarations.

All other terms and conditions remain unchanged.

910-0758FL 01 15                                                                                          Page 1 of 1

## LIMITED DISCRIMINATION COVERAGE SUBLIMIT (FLORIDA)

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Named Insured: Hayden & Associates, Inc. ☐ DBA Hayden Real        Policy Number: LHW A974690-02

Issued by The Hanover Insurance Company.

This endorsement, effective 12:01 A.M. 08/10/2011.  modifies the following:

**SECTION E – EXCLUSIONS – WHAT THIS POLICY DOES NOT INSURE**, Paragraph **7.** is deleted and replaced by:

**7.**   Arising out of any **employment practices** liability or any discrimination on any basis, including, but not limited to, race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy.

However, this exclusion shall not apply to a **claim** for discrimination on any basis, including, but not limited to, race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy arising from rendering **professional services.**

**Our** aggregate Limit of Liability for **damages** and **claim expenses** arising out of all discrimination **claims** covered under this endorsement during the **policy period** is $250.000_____which amount will be included within, and not in addition to, the aggregate Limit of Liability set forth in **Item 3.b.** of the Declarations.

All other terms and conditions remain unchanged.

# PROPERTY MANAGEMENT WITH OWNERSHIP INTEREST (FLORIDA)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Named Insured: Hayden & Associates, Inc. □ DBA Hayden Real I        Policy Number:      LHW A974690-02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M. 08/10/2018   modifies the following:

A.  **SECTION A – COVERAGE – WHAT THIS POLICY INSURES**, Paragraph 3. is deleted and replaced by:

  3.  Personal Injury Coverage

   **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as damages and claim expenses because of any **claim** made against **you** and reported to us in writing during the **policy period**, or any **extended reporting period**, if applicable, that arise from **your professional services** and are for:

   a.  **Your** defamation, libel, slander, product disparagement, trade libel, infliction of emotional distress or other tort related to disparagement or harm to the reputation or character of any person or entity;

   b.  **Your** invasion or interference with the right to privacy or publicity, including but not limited false light, public disclosure of private facts, intrusion, and invasion; or

   c.  **Your** causing a third party to be subject to wrongful eviction, false arrest, detention, or imprisonment.

B.  **SECTION E – EXCLUSIONS – WHAT THIS POLICY DOES NOT INSURE** is amended to include:

   This policy does not apply to **claim(s)**:

   Based upon, arising out of, or in any way relating to, directly or indirectly:

   a)  Any promoting of, syndication of, offering or selling of any interest in any limited partnership;

   b)  Any services as a property developer, builder, loss control inspector, risk manager, safety inspector, insurance agent, insurance broker, mortgage banker, mortgage broker, escrow agent, real estate appraiser, title abstractor, and/or title agent;

   c)  Any violation or alleged violations of the Fair Debt Collection Practices Acts (FDCPA);

   d)  Any formation, growth, presence, release, dispersal, containment, removal, testing, for or detection or monitoring of, or failure to detect or monitor or warn about any molds, fungi, spores, or other similar growth or organic matter, including but not limited to Aspergillus, Pencillium or any strain or type of Stachybotrys, or toxic black molds; or

   e)  Any construction, construction management or general contracting services. However, this exclusion shall not apply to any property or building maintenance and/or renovations that are within the scope of **professional services** in **your** capacity as a property manager and does not require the stamp of an Architect or Engineer.

C.  **SECTION E – EXCLUSIONS**, Paragraphs 12. and 14. are deleted and replaced by:

  12.  Against **you** that are brought by or on behalf of:

   a)  Any business entity that is owned managed or operated, directly or indirectly, in whole or in part, by **you**;

   b)  Any parent company, subsidiary, successor or assignee of **yours**, or anyone affiliated with **you** or such business entity through common majority ownership or control; or

   c)  Any independent contractor supplying material or services to **you**;

   However, this exclusion shall not apply to claims brought by an individual, entity or organization with a financial interest in property in which an **insured** also has an equity/ownership interest. In the event of a **claim**, the amount payable as **loss** by us will be reduced by the percentage equity/ownership owned by the **insured** or the **insured's immediate family.**

   For the purposes of this endorsement, **immediate family** means any of the following: Spouse, ex-Spouse, Sibling(s), Children, Parent(s).

910-0775FL 01 15

**14.** Any failure to effect or maintain, in the whole or part, any policy of insurance or reinsurance, any bond, or any decision or advise regarding the type or amount of insurance, reinsurance, or bond to purchase or perils to cover.

However, this exclusion shall not apply in the event the **insured** uses and consults with a properly licensed insurance agent for the insurance needs on all properties the **insured** is responsible for procuring and maintaining insurance. It is further understood that this **policy** shall not apply to the intentional failure to effect or renew any insurance.

All other terms and conditions remain unchanged.

## ADDITIONAL INSURED ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Named Insured: Hayden & Associates, Inc. □ DBA Hayden Real I          Policy Number: LHW A974690-02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M. 08/10/2018   modifies the following:

The following is added to SECTION D – DEFINITIONS, the definition of Insured:

Insured also means the entities listed in the schedule of additional insureds but only while rendering **professional services** at the request of the named insured, in support of the named insured's rendering of **professional services** to its clients; however, no coverage is afforded under this policy for any **claims** arising from any **wrongful act** in the rendering of or failing to render **professional services** by any insured covered under this endorsement that occurred prior to the retroactive date listed opposite the entity listed in the schedule of additional insureds.

Schedule of additional insureds to which this endorsement applies:

| Entity(ies) | Retroactive Date |
|---|---|
| □ □ □ □ □  □ □ □ □  □ □ □ □ □ □ □  □ □ □ | □ □ □ □ □ |
|  |  |
|  |  |

All other terms and conditions remain unchanged.

## ADDITIONAL INSURED ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Named Insured: Hayden & Associates, Inc. ☐ DBA Hayden Real I          Policy Number: LHW-A974690-02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M. 08/10/2018   modifies the following:

The following is added to **SECTION D – DEFINITIONS**, the definition of **Insured**:

**Insured** also means the entities listed in the schedule of additional **insureds** but only while rendering **professional services** at the request of the **named insured**, in support of the **named insured's** rendering of **professional services** to its clients; however, no coverage is afforded under this policy for any claims arising from any **wrongful act** in the rendering of or failing to render **professional services** by any **insured** covered under this endorsement that occurred prior to the retroactive date listed opposite the entity listed in the schedule of additional insureds.

**Schedule of additional insureds to which this endorsement applies:**

| Entity(ies) | Retroactive Date |
|---|---|
| ☐☐☐☐☐☐ ☐☐☐☐ ☐☐☐☐☐☐ ☐☐☐ | ☐☐☐☐☐ |
| | |
| | |
| | |

All other terms and conditions remain unchanged.

# FALSE PRETENSES EXCLUSION

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Named Insured: Hayden & Associates, Inc. D DBA Hayden Real I          Policy Number: LHW A974690-02

Issued by The Hanover Insurance Company.

This endorsement, Effective 12:01 A.M. 08/10/2018   modifies the following:

MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY

*(RISK PURCHASING GROUP PROGRAM)*

## SECTION E - EXCLUSIONS – WHAT THIS POLICY DOES NOT INSURE is amended to include:

This policy does not apply to **claims** based upon, arising out of or in any way related to any transfer, payment or delivery of funds, money or property, by anyone, which was caused or induced by trick, artifice, or the fraudulent misrepresentation of a material fact including, but not limited to, social engineering, pretexting, phishing, spear phishing or any other confidence trick.

All other terms and conditions remain unchanged.

910-0916 03 17                                                                                  Page 1 of 1

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

**In Witness Whereof,** this company has caused this policy to be signed by its President and Secretary and countersigned on the declarations page, where required, by a duly authorized agent of the company.

Frederick H. Eppinger
President

Charles Frederick Cronin
Secretary

SIG-1100 08 14

Page 1 of 1